UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HORTENSE CAIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:05CV1350 CDP |
| | ) |
| LANCE LURIA, | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM AND ORDER**

Former prisoner Hortense Cain brought this suit under 42 U.S.C. § 1983, alleging that Dr. Lance Luria violated her Eighth Amendment rights. Cain alleges that Dr. Luria was deliberately indifferent to her serious medical need because he repeatedly denied approval for surgery, despite doctors' recommendations that she receive a total knee replacement. Dr. Luria moves for summary judgment. Viewing the facts in the light most favorable to Cain, I conclude that a reasonable jury could find that Dr. Luria was deliberately indifferent to Cain's serious medical needs, and so I will deny Dr. Luria's motion for summary judgment.

I will also grant Cain's motion to designate one of the prison treating physicians as an expert witness, as there is no prejudice to defendant from this late designation.

# BACKGROUND

Cain was a prisoner at the Missouri Department of Corrections Women's Eastern Regional Diagnostic and Correctional Center. She participated in a work release program and suffered fractures to her knee after a tree, felled by other inmates, struck her right leg. The injury required surgery, which she received. Cain consulted the prison infirmary physician, Dr. Rakestraw, when she first experienced pain in her surgically repaired knee.

Dr. Luria was the Regional Medical Director for Correctional Medical Services. Dr. Luria's duties included clinical oversight of inmates in twenty-five locations, including the prison housing Cain. While Dr. Luria was not directly involved in treating inmate patients, certain medical procedures could not be performed without his approval.

On October 13, 2000, Dr. Rakestraw notified Dr. Luria that Dr. Biniek, the surgeon who performed the original operation on Cain's knee, recommended that Cain receive total knee replacement surgery. Dr. Rakestraw requested Dr. Luria's permission to allow Dr. Biniek to perform the procedure; Dr. Luria denied the request, citing a lack of information regarding Cain's medical issue. On November 15, Dr. Rakestraw faxed a letter, written by Dr. Biniek, to Dr. Luria that discussed the need for Cain's knee replacement surgery.

On December 12, Dr. Rakestraw requested that Dr. Luria approve a referral to an orthopedic surgeon for a second opinion. Dr. Luria approved the request; Dr. Turnbaugh provided the second opinion and determined that Cain needed a total knee replacement. On March 7, 2001, Dr. Rakestraw communicated the second opinion to Dr. Luria and informed him that "this woman is not doing well and certainly needs something done with her knee." The following day, Dr. Luria denied the request for surgery and asked Dr. Rakestraw to call him to discuss other courses of action.

Dr. Rakestraw contacted Dr. Luria again on March 30 to request a third opinion, this time from Dr. Kramer. Dr. Rakestraw alerted Dr. Luria that Cain's right knee was causing "severe pain and disability" and "it would catch her and throw her down on the ground." On April 3, Dr. Luria approved the referral for a third orthopedic opinion. Dr. Kramer concluded that Cain needed knee replacement surgery and that the case was a very complicated one. He recommended Dr. Whiteside as a prime candidate to consult regarding the surgery. Dr. Rakestraw notified Dr. Luria of Dr. Kramer's recommendation on July 27. On July 29, Dr. Luria denied the request for consultation and asked Dr. Rakestraw to call to discuss treatment options and Dr. Kramer's recommendations, noting that the case may have to be run by "our DOC counterparts since [they] may have a

financial responsibility in this matter."

On September 10, Cain went to the prison infirmary to speak with Dr. Rakestraw about the pain in her right leg. Dr. Rakestraw informed Cain that because she was scheduled for release in December of 2001, it was unlikely Dr. Luria would approve the surgery. However, Dr. Rakestraw told Cain he would seek approval one last time.

On September 11, Dr. Rakestraw sent a message to Dr. Kramer, on which Dr. Luria was copied, stating,

> This is . . . 'Fruity Cain' with the bad knee/lower leg surgery that you and I have talked about and the last time we spoke you said that you and Dr. Luria would take care of it. That has been a while. She is in my office today and is having a lot of discomfort . . . . This is just a friendly reminder . . . .

On September 12, Dr. Luria approved another referral to Dr. Kramer. The consultation with Dr. Whiteside was never approved.

During her remaining time in prison, medical staff treated Cain on five separate occasions for unrelated medical needs; she never complained about pain in her knee during those visits. In December of 2001, Cain was released from prison; she did not receive knee replacement surgery while under Dr. Luria's supervision. Once released, Cain did not have health insurance, which prevented her from receiving knee replacement surgery for over two years.

## LEGAL STANDARDS

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Carrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249.

## DISCUSSION

An inmate's right to medical care is violated if prison officials' conduct amounts to "deliberate indifference" to the inmate's serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Tlamka v. Serrell, 244 F.3d 628, 633 (8th

Cir. 2001). An Eighth Amendment claim that prison officials were deliberately indifferent to the medical need of an inmate involves both an objective and a subjective component. Tlamka, 244 F.3d at 633. An inmate must demonstrate: (1) that he or she suffered an objectively serious medical need; and (2) that the prison officials knew of but deliberately disregarded that need. Id. Each step in this inquiry is fact-intensive. Perkins v. Grimes, 161 F.3d 1127, 1130 (8th Cir. 1998).

## I. Serious Medical Need

A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). If an inmate alleges a constitutional deprivation because of a delay in medical treatment, "the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997). An inmate cannot show deliberate indifference to a serious medical need unless she places "verifying medical evidence in the record to establish the detrimental effect of the delay." Id.

Dr. Luria argues that Cain's condition was not a serious medical need because Cain did not provide the Court with sufficient medical evidence to show the damaging effect of the delay in treatment. Furthermore, Dr. Luria argues that

Cain's medical need was not serious because she did not complain of knee pain during visits with medical staff after September 10, 2001 and she waited for more than two years after her release from prison before finally having the surgery.

The evidence, viewed in the light most favorable to Cain, shows that Cain's knee condition was an objectively serious medical need. Cain suffered from a valgus deformity in her knee, which resulted from the loosening of screws inserted during her original knee surgery. The medical records show that three specialists, as well as Cain's treating physician, recommended knee replacement surgery as the proper course of action. In fact, the medical records indicate that on August 4, 2000, Dr. Rakestraw concluded Cain had a "serious medical condition" that prevented her from stepping up onto anything two feet or higher.

Furthermore, the MARS records – a system used to record inmate medical information and communicate referral requests to the Regional Medical Director – contained numerous references to instances where Cain was experiencing serious pain in her knee. MARS records show Cain suffered from "sudden onset of severe pain" on August 10. On October 13, Cain experienced "excruciating pain" that Dr. Rakestraw determined was caused by the loosening screws in her knee. On December 12, Cain had "severe pain with every step, as well as while lying in bed." The MARS records document Cain's pain through September 11, 2001.

Cain's prolonged pain, as chronicled by the MARS records, provides sufficient medical evidence to show the damage caused by the delay in treatment. In light of Cain's documented pain, the numerous recommendations that Cain undergo total knee replacement surgery, and her treating physician's determination that Cain's knee presented a "serious medical condition," a reasonable jury could conclude that Cain had a serious medical need.

## II.  Deliberate Indifference

Additionally, the inmate must show that the prison official was deliberately indifferent to her serious medical need. A prison official may be held liable if the official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 847 (1994). "It is well settled that an intentional delay in obtaining medical care for a prisoner who needs it may" constitute deliberate indifference. Plemmons v. Roberts, 439 F.3d 818, 823 (8th Cir. 2006) (internal quotations omitted); Johnson-El v. Schoemehl, 878 F.2d 1043, 1055 (8th Cir. 1989) ("Delay in the provision of treatment . . . can violate inmates' rights when the inmates' ailments are . . . painful in nature."); Durmer v. O'Carroll, 991 F.2d 64, 68 n.10 (3d Cir. 1993) ("Diagnoses is not equivalent to treatment . . . regardless of how many doctors" the patient is sent to for treatment.). However, a

doctor's failure to treat the condition is not punishment under the Eighth Amendment unless the doctor "knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

Cain alleges Dr. Luria knew of her serious medical need and was deliberately indifferent to it. Dr. Luria argues that he cannot be held liable in his role as a supervisor under Section 1983 because he was not personally involved in the patient's medical care or treatment and "the doctrine of respondeat superior is insufficient to allow recovery in a [Section] 1983 action." Bolin v. Black, 875 f.2d 1343, 1347 (8th Cir. 1989). Dr. Luria further contends that because he responded to all requests for treatment in a timely manner, he was at most negligent and medical malpractice or inadvertent failure to provide medical care does not amount to a constitutional violation. Estelle, 429 U.S. at 105–06.

Dr. Luria's respondeat superior argument misses the point. Cain is suing him based on his own actions in this case, not on any kind of respondeat superior theory. The evidence, viewed in the light most favorable to Cain, shows that Dr. Luria was the person responsible for approving the surgery, and he was the person responsible for denying and/or delaying the surgery. He had knowledge of the serious medical condition. The MARS records indicate that on or around

November 15, 2000, a letter from Dr. Biniek was faxed to Dr. Luria explaining the need for surgery.  The record contains numerous communications between Dr. Rakestraw and Dr. Luria in which Dr. Rakestraw explained that Cain was experiencing severe pain in her knee and, according to the recommendations of multiple orthopedists, knee replacement surgery was required.  Moreover, in two separate referral requests, Dr. Rakestraw indicated that Dr. Luria was aware of the situation by stating, "[Dr. Luria] and I discussed this at great length and [he is] not in favor" of the knee replacement and, in a later request, "I have discussed this case at great length with Dr. Luria."  Given the extensive communications between Dr. Rakestraw and Dr. Luria concerning Cain's knee, a reasonable jury could find that Dr. Luria had knowledge of Cain's serious medical need.

A reasonable jury could conclude that Dr. Luria exhibited deliberate indifference by failing to act in response to Cain's serious medical need.  Although Dr. Luria was not the treating physician, Cain could not receive surgery without Dr. Luria's approval.  While Dr. Luria approved some of Dr. Rakestraw's referral requests, he refused the treatment recommended by the consulted specialists and Cain's treating physician.  These repeated denials resulted in approximately a 14-month delay of treatment while Cain was under the supervision of prison physicians, during which Cain continued to experience severe and disabling pain

in her knee.

Because a reasonable jury could conclude that Cain had an objectively serious medical need and that Dr. Luria knew of the need and its seriousness but deliberately failed to treat it, I will deny summary judgment.

### III.  Expert Witness Dispute

Plaintiff has filed a motion for leave to identify Dr. Rakestraw as an expert witness.  Dr. Luria opposes the request.  Defendant is correct that plaintiff should have made this disclosure earlier under the terms of the Case Management Order, but under the factual circumstances here, there has been no prejudice to defendant and the interests of justice favor allowing the late designation.  Dr. Rakestraw was a treating physician, and under the Case Management Order he was not required to prepare an expert witness report, although plaintiff had the obligation to disclose him, to provide his medical records, and to make him available for deposition.  In this case, however, Dr. Rakestraw and defendant Dr. Luria were both employed at the time of the events by Correctional Medical Services, and Dr. Rakestraw's medical records have always been a part of the case and available to Dr. Luria.  Indeed, he relied on the records in filing his motion for summary judgment.

Dr. Rakestraw would be a fact witness in this case even if he were not designated as an expert witness, and because he is a treating doctor, I would allow

him to testify as to his opinions related to the treatment, even if he had not been designated as an expert witness. The summary judgment evidence shows that he expressed at least some of his opinions to Dr. Luria at the time of the events, so there can be no unfair surprise. I will allow plaintiff to designate him as an expert witness, and he may testify as to any opinions he has formed about plaintiff's case.

I would reach a different result if Dr. Rakestraw had been a private physician whose records were not already in defendant's possession. In this case there is simply no prejudice to Dr. Luria, and the interests of justice do not require unnaturally limiting Dr. Rakestraw's testimony.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#50] is denied.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to identify expert witness [#57] is granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of March, 2007.